T.C. Memo. 1996-310


UNITED STATES TAX COURT


KATHLEEN A. BROWN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20832-95.                    Filed July 10, 1996.


Kathleen A. Brown, pro se.

<u>T. Alan Friday</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


SCOTT, <u>Judge</u>:  Respondent determined deficiencies in

petitioner's Federal income taxes and accuracy-related penalties

under section 6662.[1]  The deficiencies were in the amounts of

_____

[1]  All section references are to the Internal Revenue Code
in effect for the years in issue, and all Rule references are to
the Tax Court Rules of Practice and Procedure, unless otherwise
indicated.

$956 and $1,213, and the accuracy-related penalties were in the amounts of $191.20 and $242.60, for the calendar years 1991 and 1992, respectively.

The issues for decision are: (1) The amount of income from tips that petitioner is required to report for each of the years here in issue, and (2) whether petitioner is liable for the accuracy-related penalties as determined by respondent.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

During the years 1991 and 1992, and for a number of years prior thereto, petitioner worked as a waitress at Angelo's Steak Pit restaurant (Angelo's) in Panama City Beach, Florida. Petitioner's legal residence at the time she filed her petition in this case was in Panama City, Florida. Petitioner filed her Federal income tax returns for the years 1991 and 1992, reporting both wage income and tip income. Petitioner was an experienced waitress during the years here in issue. She had been working as a waitress for approximately 24 years.

Angelo's was a seasonal restaurant open only during the months March through September. In 1991 petitioner worked at Angelo's 147 days during the months March through September, and in 1992 she worked 157 days at Angelo's during these months. Petitioner worked the dinner shift from approximately 4 p.m. until 9:30 or 10 p.m. each day she worked. About 20 percent of

petitioner's customers charged their food, and the remaining 80 percent of her customers paid cash for their food. The customers who charged food generally put an amount for a tip on the charge slip, but the restaurant would give the amount of such tips to petitioner in cash before she left for the day. During the years 1991 and 1992, petitioner kept a record of her tips in a notebook. Petitioner would place in her pocket the cash tips she received and the cash she received from tips that were charged. Before she left the restaurant, she generally gave a portion of her tips to the busboys, the bartenders, sometimes the cooks, and, if she had been unusually busy, other waitresses from whom she had received help. Although the amounts she gave varied, she always gave a portion of her tips to these employees, except on the rare occasions when she had a very slow night and received minimal tips. Occasionally she would have a misorder of food or would break some dishes. When this happened, petitioner would be required to pay the restaurant the amount of the misordered food or the value of the items broken. Petitioner was a good waitress and did not often misorder food or break plates. Occasionally, one of petitioner's customers would walk out without paying for the food he had been served, and petitioner was required to pay the restaurant the amount due by the customer.

Petitioner would take the amounts she paid busboys, bartenders, cooks, and other waitresses, and any amount she had to pay for misordered food, breakage, or unpaid orders from the cash in her pocket from tips to make the payments before she left the restaurant for the evening.

Busboys who served a station in which petitioner worked in Angelo's would stand, when not busy, at a place in the restaurant where they could see all the tables petitioner served and would attempt to remove used dishes promptly. Most waitresses at Angelo's, as did petitioner, regularly shared their tips with busboys, bartenders, and cooks. However, because a few waitresses did not regularly follow this practice, in 1996 Angelo's put in a requirement that each waitress turn over to the manager each evening before she left $3 of her tips to be divided among the employees. After this practice was put into effect, petitioner, as did a number of other waitresses, would give an amount to these employees in addition to the $3.

Angelo's was a family restaurant. Occasionally, a group of 10 to 15 persons would come in as a party and be seated at separate tables, but the entire check would be paid by one person. On such occasions, if different waitresses served the different tables, the waitresses would split the tip.

Although petitioner "paid out" different amounts to the busboys, bartenders, and cooks, depending on how much she had

received in tips during the evening, the average of her "payout" to these other employees was $10 a day.

When petitioner arrived home after work each evening, she would enter in a notebook the date, day of the week, number of customers she had served, her hours worked, and the amount of cash she had left in her pocket when she got home, which amount she listed as tips. It was from these records that her return preparer computed her tip income reported on her income tax return in each of the years 1991 and 1992. The amount of tips she computed from these records was $7,821.38 for 1991 and $8,059.16 for 1992. These amounts are substantially the sums resulting from an addition of the amounts that petitioner entered in the notebooks she kept as a record of her tips. The system petitioner used to record her tips was one that had been suggested to her, and she had followed it for many years.

Respondent determined that petitioner had earned $11,340 and $12,457 in tips for the years 1991 and 1992, respectively. These amounts were determined based on a report of a revenue agent, who had used the "McQuatters Formula" to determine the amount of the tips. Respondent gave this name to the formula, because this formula had been accepted in the case of McQuatters v. Commissioner, T.C. Memo. 1973-240.[2] In general, the formula is

---

[2] It should be noted that the Court in McQuatters v. Commissioner, T.C. Memo. 1973-240, did not approve the amount determined by respondent by the formula in full, but reduced the

applied by obtaining from the restaurant the total sales each individual waitress had made and reducing those sales for "stiffs", which in this case was based on 13.33 percent of sales, to arrive at sales subject to tips. The tip rate was then determined by the average tips as shown on charge sales, reduced by approximately 1 percent, with the resulting percent, which was 14.63 percent in this case, applied to the sales subject to tips.

On her income tax returns filed for 1991 and 1992, petitioner claimed the standard deduction of $5,000 for 1991, and $5,250 for 1992 in lieu of itemized deductions.

On certain days the tips petitioner showed on her records were less than the tips shown on the charge slips of her customers. It is petitioner's position that at least a substantial amount, if not all, of the difference in the amount that respondent determined to be her tips and the amount she showed on the records she kept was due to her payout of tips to the busboys, bartenders, cooks, and other waitresses, and her payment for breakage, walkouts, and similar items.

## OPINION

The record here shows that, except for mistakes petitioner might have made, her records reported only the cash that she had

---

amount, stating: "We are convinced that petitioners gave 10 to 15 percent of their tips to the captains and that to account for this and other factors respondent's formula should be applied with a 10 percent rather than a 12 percent rate of tipping."

left in her pocket when she got home from work, after paying for any breakage or the like and sharing tips with other employees. Although, based on petitioner's testimony, these payments might not account for the complete difference in the amounts determined by respondent and the amounts that petitioner reported, they would account for a substantial amount of the difference.

Respondent recognizes that it was customary for waitresses to share tips with other employees and also to pay for breakage, walkouts, and misordered food, and that petitioner did use part of her tips for this purpose. However, it is respondent's position that these items do not reduce petitioner's gross income in arriving at adjusted gross income, but are itemized deductions which petitioner is not entitled to take, since she used the standard deduction in computing her income. Respondent claims that these amounts are employee business expenses that are not deductible because of the provisions of section 62(a) in arriving at adjusted gross income, but are itemized deductions subject to certain limitations and not deductible when the taxpayer uses the standard deduction.

Section 62(a) provides for the deduction by an individual taxpayer of trade or business expenses of that taxpayer "if such

trade or business does not consist of the performance of services by the taxpayer as an employee."[3]

Respondent does not deny that it was customary for waitresses to share tips with busboys, bartenders, cooks, and sometimes other waitresses, and that they were required to pay for any breakage and food that was misordered, or for bills not

---

[3] SEC. 62. ADJUSTED GROSS INCOME DEFINED.

(a) General Rule.--For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:

(1) Trade and business deductions.--The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee.

(2) Certain trade and business deductions of employees.--

(A) Reimbursed expenses of employees.--The deductions allowed by part VI (sec. 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer. The fact that the reimbursement may be provided by a third party shall not be determinative of whether or not the preceding sentence applies.

(B) Certain expenses of performing artists.-- The deductions allowed by sec. 162 which consist of expenses paid or incurred by a qualified performing artist in connection with the performances by him of services in the performing arts as an employee.

paid by walkouts, or mistakes they made on the bills, but contends that these items are deductions and not an offset that results in a reduction in the gross income received from tips. At the conclusion of the evidence, the Court called the attention of respondent's counsel to the fact that many cases had allowed a waitress's tips to be reduced by "payouts" to busboys and bartenders in determining her gross income from tips, and requested a memorandum explaining any distinction between those cases and this case. The memorandum filed discusses none of these cases.

In Meneguzzo v. Commissioner, 43 T.C. 824, 829 (1965), respondent in computing tip income of a waiter at Whyte's Restaurant in New York City, reduced the tips computed on the charge payment or left in cash by 15 percent "paid out" to busboys. In approving the formula, we specifically referred to the reduction of the income from tips by 15 percent for sharing by the waiter of tips with busboys. Meneguzzo v. Commissioner, 43 T.C. at 833. This same type reduction has been used by this Court in numerous other cases. Some of the cases in which tip income was reduced by an amount shared by the waitress with busboys are the following: Guadron v. Commissioner, T.C. Memo. 1994-553; Nika v. Commissioner, T.C. Memo. 1991-335; Butler v. Commissioner, T.C. Memo. 1991-118; Williams v. Commissioner, T.C. Memo. 1985-476; McLeod v. Commissioner, T.C. Memo. 1984-658;

<u>Zibilich v. Commissioner</u>, T.C. Memo. 1972-92; and <u>Chippi v.</u> <u>Commissioner</u>, T.C. Memo. 1971-236.

In <u>Chippi v. Commissioner</u>, T.C. Memo. 1971-236, we found that the tip income of certain waiters should be reduced by 20 percent for tips to busboys.

These cases do not specifically state whether the taxpayer used the standard deduction or itemized deductions. No such statement was necessary, since the reduction was in the gross income required to be reported and, therefore, would not affect itemized deductions or the taking of the standard deduction.

The law with respect to expenses that an employee may deduct from gross income to arrive at adjusted gross income has not changed since 1954 in a way to affect the issue here. Since the enactment of the 1954 Revenue Code, an employee has been entitled to claim business expense deductions, except those in specified categories, only as itemized deductions and not as deductions from gross income in arriving at adjusted gross income.[4]

---

[4] The Revenue Code of 1954 as originally enacted provided--

SEC. 62. ADJUSTED GROSS INCOME DEFINED.

For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:

(1) Trade and business deductions.--The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of

It is clear, therefore, that both respondent and this Court have for many years consistently reduced computed tip income by the amount of the tips a waiter or waitress shared with busboys, bartenders, and similar employees.  There is no specific discussion in any case we have found of why this is a necessary adjustment to the amount of tips placed on charge slips or left

_____

services by the taxpayer as an employee.

    (2) Trade and business deductions of employees.--

        (A) Reimbursed expenses.--The deductions allowed by part VI (sec. 161 and following) which consist of expenses paid or incurred by the taxpayer in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer.

        (B) Expenses for travel away from home.--The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

        (C) Transportation expenses.--The deductions allowed by part IV (sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

        (D) Outside salesmen.--The deductions allowed by part VI (sec. 161 and following) which are attributable to a trade or business carried on by the taxpayer, if such trade or business consists of the performance of services by the taxpayer as an employee and if such trade or business is to solicit, away from the employer's place of business, business for the employer.

on a table in cash to arrive at the gross tip income of a waiter or waitress. However, the inference from the cases is that the tip is left to be shared by all who have served the customer.

Clearly, when more than one waitress works at a table and one waitress receives the tip, the tip is intended for all waitresses who served that table. Unquestionably, where petitioner shared her tip with another waitress who helped her, the tip she shared was really intended in part for the other waitress, and the other waitress's part is not income to petitioner. Whether the person leaving a tip intended a pass-through for the busboys, bartenders, and cooks is not as clear. The testimony in this record shows that the busboys stood in full view and helped in various ways with serving and clearing the table. The bartender might not be directly in sight, but people who ordered drinks were certainly aware of the work of the bartender. Therefore, in our view, the sharing by a waitress of tips with busboys, bartenders, and cooks is merely to carry out the pass-through intent of the customer, and the gross amount of the tip is not intended to be hers to keep in its entirety. For over 30 years this has been the rationale of respondent in determining tip income and of this Court in approving or modifying that determination. In this case, even though respondent's counsel was requested to explain the change in position from prior cases, no such explanation has been

forthcoming.  Under these circumstances, we do not consider this an appropriate case to discuss in further detail the correctness of the long-standing method of computing gross income from tips by reducing the tips left on a waitress's table by the "payout" she makes to busboys, bartenders, and other waitresses.

Respondent apparently does not dispute petitioner's testimony that on the average she "paid out" $10 a day to busboys, bartenders, cooks, and other waitresses.  This amount is in line with the 20 to 25 percent of tips allowed as "payouts" to other employees in some recent cases.  We, therefore, hold that the amount of tip income of petitioner as determined by respondent should be reduced in each year by $10 a day for "payouts" to other employees.

The situation with respect to the cash payments to the restaurant for breakage, misordered food, walkouts, and similar items is different.  We did not find nearly as many cases dealing with this question as we did cases dealing with "payouts" to busboys and similar employees.  Also, we found no case making a specific adjustment for these items, although some cases referred in general to a consideration of the items.[5]  In this case

---

[5]  For instance, in Applegate v. Commissioner, T.C. Memo. 1980-497, we stated:  "We also hold that the petitioner failed to sustain her burden of proving that she is entitled to deductions for the 'walkouts'".  In Sanders v. Commissioner, T.C. Memo. 1979-352, we stated:

   Finally, petitioner argues that respondent has not

petitioner's testimony is very imprecise as to the amount she might have been required to pay in either year here in issue for misordered food, breakage, or walkouts. Since petitioner claimed the standard deduction on her income tax returns, she is not entitled to itemized deductions. Therefore, if her payment for misordered food, breakage, and walkouts is an employee business expense, the amount is immaterial unless it would exceed the standard deduction, which clearly it would not.

The evidence in this case does not show enough of the nature of the payments for breakage, misordered food, and walkouts for us to determine whether these payments are itemized business expense deductions for petitioner or whether some other adjustment for these amounts would be necessary if petitioner had shown with any exactitude the amount of such payments.

Since the evidence does not show the amounts, if any, petitioner paid in the years here in issue for breakage, misordered food, and walkouts, we need not decide whether such

---

allowed enough of an offset for amounts paid to busboys and amounts she had to pay for breakages and checks that her customers did not pay. Respondent allowed 10 percent as paid to busboys. This amount computes to be larger than the fifty cents daily she paid the busboys and thus leaves a margin for breakages and unpaid checks. Petitioner has not shown, nor is there anything in the record from which we can estimate, the amount of breakage or unpaid checks. We must, therefore, find for respondent on the amount of offset to be made to gross tips.

payments would be itemized deductions or some other type of adjustment if they had been proven.

The testimony shows that, except for failing to reduce petitioner's tips for "payouts" to busboys and other employees, respondent's computation of petitioner's tip income is reasonable. In fact, petitioner, though not stating that she accepted it, did not truly question the amounts respondent showed for various items. She, herself, thought the difference in her records and respondent's computation was due to the amount of the tips she passed on to others in the restaurant who also served the customers and amounts she paid for breakage and other items. Certainly these differences in method of computation of tip income account for a substantial portion of the difference in petitioner's and respondent's computations.

In our view, petitioner has shown that she should not be held liable in either year here in issue for the accuracy-related penalty under section 6662. Although respondent did not state what subsection of section 6662 she contended required the penalty, it is apparent that the penalty must have been intended as one for negligence. Petitioner had her tax returns prepared by a preparer she considered competent. She kept records in a way she believed to be in accordance with the instructions from her return preparer. Certainly for someone with petitioner's lack of tax knowledge, it would be normal to expect that her tips

were the amount received, less what she had "paid out" to other employees and had paid for breakage and the like. The difference in what she showed on her records and the amounts determined by respondent with only these adjustments is difficult to determine from this record. However, if petitioner had kept the records to substantiate all items she paid from tips, the difference might have been relatively small. For a person of petitioner's understanding of bookkeeping, she kept a reasonable set of books. Petitioner explained that she now kept better records showing all items separately. She stated that she now accounts for the total amount which comes into her hands as tips. From her testimony, apparently she started her new system after the revenue agent called her attention to inaccuracies in the system she was using. However, in our view, petitioner followed what she understood the

instructions to be as to the records she should keep, and we, therefore, conclude that she should not be charged with the accuracy-related penalty.

<u>Decision will be entered</u> <u>under Rule 155</u>.